IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

B.S. and B.S. *as guardian and parent of* )
T.S., G.S., and N.S., )
 )
 )
 Plaintiffs, )
 ) CIVIL ACTION NO. 3:08-30
 v. ) JUDGE KIM R. GIBSON
 )
SOMERSET COUNTY, SOMERSET )
COUNTY CHILDREN AND YOUTH )
SERVICES, JESSICA ELLER, JULIE )
BARTH, )
 )
 Defendants. )

## MEMORANDUM OPINION AND ORDER OF COURT

### I.  SYNOPSIS

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (**Doc. 53**) (the "Plaintiffs' Motion" or the "Plaintiffs' Motion for Summary Judgment"), and Defendants' Motion for Summary Judgment (**Doc. 49**) (the "Defendants' Motion" or the "Defendants' Motion for Summary Judgment), pursuant to Federal Rule of Civil Procedure 56. Each party opposes the other party's motion for summary judgment. Doc. 61, 62, 67, 68, 70, 75. For the reasons that follow, the Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

### II.  PROCEDURAL BACKGROUND

This case arises from a custody dispute between Plaintiff B.S., the natural mother of a minor child ("B.S." or "the Natural Mother"), M.N., a minor child ("M.N." or "the Minor Child"), and E.N., the natural father of M.N. ("E.N." or "the Natural Father"). Doc. 1.

Plaintiffs seek summary judgment on Count II of the Complaint ("Count II") (Doc. 1). Count

II alleges that the transfer of the custody of the minor child, M.N., from the Natural Mother to the custody of the Natural Father was based on Defendant Eller's *ex parte* communications with a judge in the Court of Common Pleas of Somerset County, without a "timely" hearing or opportunity for Plaintiff B.S. to defend her custody rights. Doc. 1 at 22-23. Thus, Count II alleges, Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution were violated. Id; Doc. 59 at 1. Plaintiffs argue that there are no disputes of material facts about the removal of the Minor Child from the Natural Mother's custody, nor any material disputes regarding the absence of a pre- or post-deprivation hearing, therefore summary judgment on Count II of the Complaint is appropriate. Doc. 59 at 2.

Defendants seek summary judgment on all counts (Doc. 50), arguing that Ms. Eller and Ms. Barth, as employees of a local government agency, have qualified and absolute immunity. Defendants also argue that Defendants Somerset County and Somerset County Children and Youth Services would only be liable under 42 U.S.C. § 1983 if they were responsible for a custom, policy or practice which violates constitutional rights, and that in this case they are not. Doc. 50 at 12-14.

### III.    JURISDICTION AND VENUE

The Court's jurisdiction has been invoked over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) because the factual allegations at the heart of this complaint concern events occurring in Somerset County in the Western District of Pennsylvania.

### IV.    FACTS

This case involves the transfer of custody of the Minor Child from the Natural Mother to the Natural Father pursuant to a court order which was entered after an *ex parte* meeting between a judge of the Court of Common Pleas of Somerset County and a Somerset County Children and Youth

Services ("CYS") caseworker, Defendant Jessica Eller, during which *ex parte* meeting Ms. Eller provided the judge with her findings and conclusions based on her investigation of the Minor Child's home environment. From the time of the Minor Child's birth until May 6, 2006, the Minor Child was in the custody of her Natural Mother, at which time she was transferred to the custody of her Natural Father, pursuant to the aforementioned court order. There are no assertions or evidence in the record that there was any formal custody arrangement between the Natural Mother and the Natural Father prior to that point.[1] Doc. 13 at 4. CYS did not take custody of the Minor Child at any time nor did it conduct a dependency hearing seeking to make the minor child a dependent of the state.

The pleadings indicate that the Minor Child was born in June 2004 with a tumor on her back; after its removal, she was slow to gain weight during her infancy and was diagnosed and treated for failure to thrive by Dr. Douglas Lindblad, a pediatric gastroenterologist, at Children's Hospital. Docs. 1, 51, 59. According to Defendants' pleadings, after many tests and office visits, and a week-long hospital stay, during which M.N.'s weight gain was markedly greater than her weight gain while in the care of the Natural Mother, Dr. Lindblad concluded that the failure to thrive was not organic, but rather was based on factors in the home. Doc. 51 at 5-8. Further, Dr. Lindblad suspected that the Minor Child's Natural Mother had Munchausen by Proxy. Doc. 51 at 6-7. (In their filings, Plaintiffs do not address the claimed contrast in weight gain during the period of hospitalization, but they repeatedly cite quotations and/or records from various healthcare providers at various points that state that the Minor Child appeared to be doing well. Doc. 59 at 3.).

In early December, 2005, B.S. made two requests for the services of Somerset County Children and Youth Services ("CYS"), claiming that she believed the Minor Child's Natural Father was not

---

[1] The Natural Mother and Natural Father were living together at the time of the Minor Child's birth but subsequently separated and the complaint alleges that "B.S. was the primary custodian of M.N., after they separated." Doc. 13 at 4.

feeding the Minor Child during the times that he had custody, and also reporting what she believed to be a suspicious bruise on the Minor Child's chin after a visit with her Natural Father. Doc. 51 at 8-9; Doc. 56 at 2; Doc. 59 at 3-4. CYS was given permission by B.S. to consult with M.N.'s physicians and have access to M.N.'s medical records. Doc. 51 at 10-11. At some point between mid-March, 2005 and early May, 2005, Dr. Lindblad advised CYS caseworker Defendant Jessica Eller of his failure to thrive diagnosis and his suspicion of Munchausen by Proxy, which he believed was having deleterious effect on the Minor Child's health. Doc. 51 at 11-12; Doc. 59 at 4. On April 7, 2006, Tom Horave of Child Custody informed Ms. Eller of CYS that Child Custody had done an assessment of the home of the Natural Father of M.N. and there were no concerns regarding M.N. being in her Natural Father's home. Doc. 51 at 13.

Throughout their pleadings, Plaintiffs allege that Defendant Eller's actions were motivated by a personal animus and/or vendetta towards Plaintiff B.S., although they do not identify the alleged reason for this animus.

On May 4, 2006, Dr. Lindblad filed a report with ChildLine regarding his concerns. Doc. 51 at 12. Plaintiffs allege that Defendant Eller coerced Dr. Lindblad into filing the report. Doc. 56 at 3; Doc. 59 at 4. Defendants claim that Dr. Lindblad had the prior intention of filing the report, and had informed Ms. Eller of this intent prior to the date of his actual filing, May 4, 2006, but had been delayed in his filing until that date due to other responsibilities. Doc. 51 at 12.

According to Defendant's pleadings, on May 5, 2006, Ms. Eller made her report to ChildLine based on her investigation and her communications with Dr. Lindblad. Doc. 51 at 12. Plaintiffs contest this and state that Ms. Eller "made a referral to ChildLine on her own behalf" before Dr. Lindblad filed his report/made his referral (Doc. 56 at 3) and that Ms. Eller "*directed* Dr. Lindblad to make a ChildLine referral." Doc. 59 at 6. As stated previously, Plaintiffs allege that Ms. Eller's

4

findings were the result of a personal animus between Ms. Eller and B.S., but do not explain the source

of this alleged bias. Docs. 56, 59, 76.

On May 5, 2006 the Somerset Court of Common Pleas entered an order (prepared by Ms. Eller

of CYS) that the Minor Child was to reside with her Natural Father until the completion of the

investigation, and that all contact and visitation between the Natural Mother and the Minor Child be

supervised (the "Emergency Custody Order"). Doc. 51 at 14; Doc. 52-11.

The Emergency Custody Order read as follows:

AND NOW, THIS 5 DAY OF MAY 2006, DUE TO ALLEGATIONS OF
SERIOUS PHYSICAL NEGLECT WHICH ARE UNDER INVESTIGATION
BY SOMERSET COUNTY CHILDREN AND YOUTH SERVICES, IT IS
HEREBY ORDERED THAT ALL CONTACT AND VISITATION BETWEEN
THE ABOVE NAMED CHILD AND HER NATURAL MOTHER, [B.S.], BE
SUPERVISED BY SOMERSET COUTNY [sic] CHILDREN AND YOUTH
SERVICES PENDING THE OUTCOME OF THE INVESTIGATION. IT IS
ALSO ORDERED THAT [THE MINOR CHILD] SHALL RESIDE WITH HER
FATHER, [E.N.], UNTIL THE COMPLETION OF THE INVESTIGATION
AND [B.S.] SHALL CONDUCT HERSELF APPROPRIATELY IN ALL
VISITATIONS WITH [THE MINOR CHILD], INCLUDING NO BADGERING
OR HARASSING THE AGENCY STAFF, BELITTELING [sic] ANY
SERVICE PROVIDERS OR THE NATURAL FATHER.

Doc. 52-11.

Plaintiffs allege that this Emergency Custody Order was entered after an *ex parte* meeting

between Ms. Eller and the judge in the case, Judge Cascio, and therefore violated due process. Doc. 56

at 4, 14. Plaintiffs further allege that a "'summary'" prepared by Ms. Eller, which commenced the

case with the Court of Common Pleas on the Juvenile docket on May 5, 2006, contained either

purposeful falsehoods and/or dated information, specifically a misrepresentation as to the Minor

Child's weight, and that a copy of this summary was not given to B.S., nor to her counsel. Doc. 56 at

5, 13-15; Doc. 59 at 5-6, 10-11. Plaintiffs refute the findings of Dr. Linblad of failure to thrive, and

argue that Dr. Lindblad was pushed into the referral to ChildLine by Ms. Eller, and that had Dr.

Lindblad had more information regarding the Minor Child's weight, he would likely not have made the referral. Doc. 56 at 6-7. Plaintiffs contend that "no process, with the exception of the May 5th Court Order, was served on B.S. . . . [and that t]his order had the effect of indefinitely extinguishing the custodial rights B.S. had enjoyed prior to the entry of the Order." Doc. 59 at 6-8; see also Doc. 56 at 8.

On May 5, 2006, police officers, accompanied by CYS, removed the Minor Child from the home of her Natural Mother and delivered her to the home of her Natural Father. Doc. 51 at 15.

Plaintiffs contend that B.S. was not apprised of any right to a custody hearing and argues that because there was no "automatic hearing" after entry of the Emergency Custody Order, and that CYS has a custom of not holding an automatic hearing when custody is transferred from one parent to another, that this practice or custom violated Plaintiffs' due process rights. Doc. 56 at 9-12; Doc. 59 at 8-10.

On May 24, 2006 Plaintiff B.S. filed a *habeas corpus* petition with the Court of Common Pleas of Somerset County. Doc. 51 at 15; Doc. 59 at 11.   On June 7, 2006, the Court of Common Pleas of Somerset County issued an order notifying all parties of the scheduling of a *habeas corpus* hearing in response to the petition filed by the Natural Mother. The *habeas corpus* hearing was held on June 13, 2006.

Following the Emergency Custody Order, CYS continued to investigate, and ultimately prepared a report, dated June 19, 2006 that indicated that the Natural Mother, Plaintiff B.S., was "indicated" as a perpetrator of serious neglect/abuse of the Minor Child (the "Indicated Report"). Doc. 51 at 16; Doc. 52-16. The Somerset Court of Common Pleas signed another summary and order on June 23, 2006 which ordered that due to the "Indicated" status of B.S., all visitation between B.S. and the Minor Child was to "continue to be supervised until further hearings [on the] matter [were] scheduled by either parent." Doc. 52-16; Doc. 51 at 16-17; Doc. 62 at 4. Plaintiffs contend that this

6

was a "secret order". Doc. 59 at 13.

The "secret" order that was entered by the Court of Common Pleas of Somerset County on June 23, 2006, approximately forty-five (45) days after the entry of the Emergency Custody Order, read as follows:

> AND NOW, THIS 23 DAY OF JUNE, 2006, DUE TO THE INDICATED REPORT OF SERIOUS PHYSICAL NEGLECT WHEREBY [B.S.] IS THE PERPETRATOR, IT IS HEREBY ORDERED THAT ALL VISITATION BETWEEN [B.S.] AND [THE MINOR CHILD] CONTINUE TO BE SUPERVISED UNTIL FUTHER HEARINGS ON THIS MATTER ARE SCHEDULED BY EITHER PARENT.

Doc. 52-16. As is obvious from the above text, a hearing was not automatically scheduled on the matter, but the parties were notified of their right to schedule a hearing. The captions on the Petition for Writ of Habeas Corpus, filed May 15, 2006, and the Orders entered on June 7, 2006, June 23, 2006 and June 26, 2006, all indicate the same case number.

On June 26, 2006 the Somerset Court of Common Pleas issued an order on the *habeas corpus* petition (the "Habeas Corpus Order") finding that the Child Protective Services Law had *not* been triggered, because the Minor Child had not been taken into protective custody by CYS, and further finding that the Minor Child was *not* a dependent of the state because her Natural Father was available and willing to provide adequate care for her. Therefore, the *habeas corpus* petition was denied as moot. Doc. 52-14; Doc. 51 at 15; Doc. 59 at 11-13. Plaintiffs contend that prior to the *habeas corpus* hearing they were never made aware of the alleged *ex parte* meeting between Ms. Eller and Judge Cascio, which occurred immediately prior to the entry of the Emergency Custody Order, nor were they made aware of the summary prepared by Ms. Eller and allegedly given to Judge Cascio at that meeting. Doc. 56 at 14-15; Doc. 59 at 12. Plaintiffs allege that Defendant Eller presented purposefully false information to the Judge in this meeting, and infer that this *ex parte* meeting and

7

exchange of information violated due process. Doc. 59 at 12.

On June 27, 2006, B.S. was sent a notice by the Pennsylvania Department of Public Welfare of her status as "Indicated" (the "Notice of Indication"). This Notice of Indication informed B.S. of her right to receive a copy of the Indicated Report and to request that it be amended or destroyed. Doc. 52-17; Doc. 51 at 17. It also informed her of her right to a hearing if this request was denied. *Id.*

In a letter dated September 12, 2006, the Pennsylvania Department of Public Welfare (the "Public Welfare Department") acknowledged the receipt of a letter from Plaintiffs' counsel requesting that the information about B.S. be expunged from the Central Register of Child Abuse. Doc. 52-18; Doc. 51 at 17. The Public Welfare Department notified Plaintiffs' counsel that it would perform an administrative review of all materials and render a decision within four to six months, which could be appealed by the individual indicated as an abuser if the review was negative; any such appeal would include a hearing. Doc. 52-18. The letter also informed Plaintiffs' Counsel that B.S. had the option to skip an administrative review and go directly to a hearing. Id.

On December 8, 2006, the Department of Public Welfare advised Plaintiffs by letter that the request to expunge was denied, and reminded Plaintiffs' counsel of B.S.' right to a hearing. Doc. 52-19; Doc. 51 at 17. At some point B.S. withdrew her appeal to have her record of child abuse expunged: the record contains an undated notice to this effect by B.S.' attorney, filed with the Commonwealth of Pennsylvania Department of Public Welfare Bureau of Hearings and Appeals. Doc. 52-20; Doc. 51 at 17. The parties have indicated that custody litigation between the Natural Mother and Natural Father was initiated and is ongoing, and that the Minor Child remains in the custody of the Natural Father. Doc. 51 at 18-19; Doc. 52-6 at 5.

## V.   STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment may only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005); citing *Debiec v. Caot Corp.*, 352 F.3d 117, 128 n. 3 (3d Cir. 2003). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment against a party is appropriate where that party fails to make a sufficient showing of an element for which that party will bear the burden of proof at trial, and which is an essential element of that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007); see also *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 126 (3d Cir. 1994); citing *Oritani Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 637 (3d Cir. 1993). The burden is initially on the moving party to demonstrate that the evidence contained in the record does *not* create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). See also *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994); citing *Celotex Corp. v. Catreett*, 477 U.S. 317, 322-32 (1986). Where the non-moving party will bear the burden of proof at trial as to some element or claim, the moving party may meet its initial burden as to issues of material fact by showing that the

9

admissible evidence contained in the record would be insufficient to carry the non-moving party's burden of proof. *Celotex*, 477 U.S. at 322.

Once the moving party satisfies its burden that the record contains no genuine issue of material fact, the burden shifts to the non-moving party, who must go beyond his or her pleadings by the use of affidavits, depositions, admissions or answers to interrogatories, in order to demonstrate that there *is* a genuine issue of material fact for trial. *Id.* at 324. In attempting to do so, the non-moving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## B. CIVIL LIABILITY UNDER 42 U.S.C. § 1983

The instant claim is brought pursuant to 42 U.S.C. § 1983, which "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution of the United States." *Jarrett v. Twp. of Bensalem*, 312 Fed. Appx. 505, 507 (3d Cir. 2009); citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).

As the Third Circuit has explained,

§ 1983 is not a source of substantive rights, but provides a remedy against state officials for violations of constitutional rights. [*internal citations omitted*]. The initial inquiry in a section 1983 suit is (1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether the conduct deprived the complainant of rights secured under the Constitution or federal law.

*Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. Pa. 1998); citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 2d 791 (1985) (plurality opinion); also citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694-95 n.3, 61 L. Ed. 2d 433 (1979); also citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988);

_also_ citing _Mark v. Borough of Hatboro_, 51 F.3d 1137, 1141 (3d Cir. 1995); see also _Jarrett v. Twp. of Bensalem_, 312 Fed. Appx. 505, 507 (3d Cir. 2009).

A local governmental entity may only be sued under § 1983 for an action which represents official policy or custom that caused a deprivation of a plaintiff's constitutional rights. The Supreme Court of the United States has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." _Monell v. Dep't of Soc. Servs. of City of New York_, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); cited and quoted by _Bayer v. Monroe County Children & Youth Servs._, 2011 U.S. App. LEXIS 2550 (3d Cir. 2011); see also _Doby v. DeCrescenzo_, 171 F.3d 858, 867 (3d Cir. 1999); see also _Monell v. Dep't of Soc. Servs._, 436 U.S. 658, 694 (U.S. 1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The Third Circuit has explained how a plaintiff may show custom and/or policy:

> a plaintiff can show a local government's custom and/or policy in the following manner: Policy is made when a decisionmaker possessing . . . final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.
>
> In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.

11

*Bayer v. Monroe County Children & Youth Servs.*, 2011 U.S. App. LEXIS 2550, 12-13 (3d Cir. 2011); quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Government officials/state actors may assert an affirmative defense of absolute or qualified immunity. The Supreme Court has noted that "[t]he procedural difference between the absolute and the qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." *Imbler v. Pachtman*, 424 U.S. 409, 419 (U.S. 1976).

The Supreme Court has held that prosecutors have absolute immunity from suit under § 1983 in pursuing prosecutions:

> The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment.

*Imbler v. Pachtman*, 424 U.S. 409, 427 (U.S. 1976).

The Third Circuit has held that a child welfare worker is entitled to absolute immunity for quasi-prosecutorial functions performed in the context of a judicial dependency proceeding, as the same public policy rationale supporting immunity for prosecutors applies in that instance. *Ernst v. Child and Youth Services*, 108 F. 3d 486, 494-95 (3d Cir. 1997); cited by *Shaw v. Thomas*, 2005 U.S. Dist. LEXIS 27478 (M.D. Pa. Aug. 22, 2005).

In contrast, qualified immunity must be analyzed in light of the circumstances of the case. The

Supreme Court has explained the doctrine of qualified immunity as follows:

> The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' [*internal citations omitted*]. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'

*Pearson v. Callahan*, 555 U.S. 223; 129 S. Ct. 808, 815; 172 L. Ed. 2d 565, 573 (U.S. 2009); citing and quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); also citing and quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting); in turn citing *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

The Supreme Court has noted that while the subjective intent of a defendant's actions may be an essential element of the pleading of certain constitutional federal *claims*, it is irrelevant in analyzing an affirmative qualified immunity *defense*; qualified immunity is an affirmative defense which is separate from a cause of action. *Crawford-el v. Britton*, 523 U.S. 574, 588; 118 S. Ct. 1584, 1591-92; 140 L. Ed. 2d 759, 773-74 (1998).

## C. DUE PROCESS – LEGAL STANDARDS

The Fourteenth Amendment to the U.S. Constitution states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." USCS Const. Amend. 14; see also *Gardner v. McGroarty*, 68 Fed. Appx. 307, 310, 2003 U.S. App. LEXIS 11452 (3d Cir. 2003). The Supreme Court has held that this refers not only to the adequacy of due process

13

procedures, but also to substantive law. *Nicholas v. Pennsylvania State University, et al.*, 227 F.3d 133, 139; citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846-47, 120 L.Ed. 2d 674, 112 S. Ct. 2791 (1992); also citing *Witney v. California*, 274 U.S. 357, 373, 71 L. Ed. 1095, 47 S. Ct. 641 (1927). Indeed, the Third Circuit has noted that "a non-legislative government deprivation 'that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'"" *Nicholas v. Pennsylvania State University* at 139 (citations omitted).

### i. SUBSTANTIVE DUE PROCESS

As we have previously stated, "[n]on-legislative, *substantive* due process rights are those rights that are 'fundamental under the Constitution'". (*emphasis added*). *Jendrzejewski v. Watson et al.*, 2009 U.S. Dist. LEXIS 24352 at *11 (W.D. Pa. 2009); citing *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000).

As succinctly stated by the Third Circuit,

The Supreme Court has long recognized that the right of parents to care for and guide their children is a protected fundamental liberty interest. [*internal citations omitted*]. That constitutional protection is "deeply rooted in this Nation's history and tradition." [*internal citations omitted*].

Nevertheless, the parental liberty interest is not absolute. It is well-established that "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights."

*Anspach v. City of Philadelphia,* 503 F.3d 256, 261 (3d Cir. Pa. 2007). [*citations omitted*].[2]

The Western District of Pennsylvania has previously noted that when it comes to a social

---

[2] citing *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); also citing *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); also citing *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944); also citing *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); also citing *Parham v. J. R.*, 442 U.S. 584, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979); also citing *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); also citing *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977).

worker's interference with the child-parent relationship, only conduct that is so arbitrary as to shock the conscience may be considered a violation of a parent's substantive due process rights. *Patterson v. Armstrong County Children and Youth Services, et. al.*, 141 F. Supp.2d 512, 520-522 (W.D. Pa. 2001); citing *Miller* at 376; also citing *Croft* at 1125-26; also citing *Doman v. City of Philadelphia*, 2000 U.S. Dist. LEXIS 12348, 2000 WL 1224906, *2 (E.D. Pa. 2000); see also *Studli v. Children & Youth & Families Cent. Reg'l Office*, 346 Fed. Appx. 804, 811 (3d Cir. 2009) ("[a] social worker's negligence will not, on its own, violate a parent or child's substantive due process right. . . . Rather, a substantive due process violation by a social worker must be 'so clearly arbitrary' that it 'can properly be said to shock the conscience.'"); citing and quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir. 1999); in turn citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). Intent in such instances is immaterial: "[a] social worker need not have acted with 'the purpose to cause harm,' but must 'exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness.'" *Id.*

## ii. PROCEDURAL DUE PROCESS

In contrast, it is well settled that *procedural* due process rights under the Fourteenth Amendment apply only to deprivations of "[p]roperty interests . . . [which] are created and their dimensions are defined . . . from an independent source such as state law." See *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); cited by *Clark v. Falls*, 890 F.2d 611, 617 (3d Cir. 1989); also cited by *Blanding v. Pennsylvania State Police et al.*, 811 F. Supp. 1084, 1091 (E.D. Pa. 1992), aff'd 12 F.3d 1303 (3d Cir. Pa. 1993); see also *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); see also *Demko v. Luzerne County Community College*, 113 F. Supp. 2d 722, 728 (M.D. PA. 2000); see also *Cohen v. Board of Trustees*, 867 F.2d 1455, 1462 (3d Cir. 1989) ("[P]rocedural due process claims . . . refer to a source of

positive law which creates the protected property interest.").

### iii. DUE PROCESS AND PARENTAL CUSTODY – THIRD CIRCUIT PRECEDENT

As the Third Circuit has acknowledged, "[t]he Supreme Court has recognized a 'fundamental liberty interest of natural parents in the care, custody, and management of their children." *Miller et. al. v. City of Philadelphia, et. al.*, 174 F.3d 368, 373 (3d Cir. 1999); citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991); also citing *Larsen v. Senate of the Commonwealth of Pa*, 154 F.3d 82, 86 (3d Cir. 1998). The Third Circuit has summarized the process of balancing the liberty interests of parents in their children's companionship and custody with the state's interest in children's safety, as follows:

> We recognize the constitutionally protected liberty interests that parents have in the custody, care and management of their children. . . . We also recognize that this interest is not absolute. . . . Indeed, this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children particularly where the children need to be protected from their own parents. . . . The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations. [*internal citations omitted*].

> The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process. In determining whether the [parents]' constitutionally protected interests were violated, we must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse. Whatever disruption or disintegration of family life the [parents'] may have suffered as a result of the county's child abuse investigation does not, in and of itself, constitute a constitutional deprivation. [*internal citations omitted*].

> We realize there may be cases in which a child services bureau may be justified in removing either a child or parent from the home, even where later investigation proves no abuse occurred. However, a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. . . .

16

> Our focus here is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parents]' rights as [the minor]'s parents. Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power.

*Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1125-1126 (3d Cir. Pa.

1997); citing *Lehr v. Robertson*, 463 U.S. 248, 258, 103 S. Ct. 2985, 2991-92, 77 L. Ed. 2d 614 (1983).

*(Additional citations omitted).*

In the context of emergency *pre-deprivation* hearings the Third Circuit has held:

> We do not discount parents' strong interest in the custody of their children, but requiring that a parent or his attorney be included in emergency pre-deprivation hearings "when available" or "when at hand" would build delay into these time-sensitive hearings and encourage litigation over "availability." Such a requirement would thus inhibit, deter and, at times, subvert the crucial function of ex parte custody hearings -- protecting children who are in imminent danger of harm.

*Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999).

The Supreme Court has noted that "persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753-754 (U.S. 1982).

### D. PENNSYLVANIA STATE LAWS THAT THE PARTIES CITE IN THEIR ARGUMENTS – THE JUVENILE ACT AND THE CPSL

Plaintiffs' arguments include references to the Child Protective Services Law ("CPSL") and the Juvenile Act, therefore we will briefly discuss their relevant provisions.

#### i. The Child Protective Services Law ("CPSL") 23 Pa.C.S.A. § 6302 et. seq.

The CPSL's purpose is:

17

> to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S. § 6302.

Under § 6315 of the CPSL a child may be taken into protective custody in cases of emergency, by a medical facility or treating/examining physician. In these cases, however, the child may not be held for more than 24 hours without written notification to the child, parent or guardian as to the whereabouts of the child and the reason for protective custody. 23 Pa.C.S.A. § 6315(a)-(b). In addition, where the child is taken into emergency protective custody under this Section, the appropriate county agency must be notified within 24 hours and must obtain an order "from a court of competent jurisdiction" no later than 72 hours after the child is taken into protective custody. 23 Pa.C.S.A. § 6315(b), (d). After receipt of a judicial authorization based on the merits of the situation, in the form of a court order, the county agency may take a child into protective custody for protection from abuse. 23 Pa.C.S.A. § 6369.

#### ii. The Juvenile Act

The Juvenile Act is found at 42 Pa.C.S. § 6301 et. seq. Under the Juvenile Act, a Dependent Child is defined as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical,

18

mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;

(7) is under the age of ten years and has committed a delinquent act;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6);

(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6); or

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

42 Pa.C.S. § 6302.

Under the Juvenile Act, where a child has been taken into protective custody an informal hearing, must be held within 72 hours with reasonable oral or written notice to the parents/custodians and child, if they can be found. Further,

[i]f the child is alleged to be a dependent child, the court or master shall also determine whether reasonable efforts were made to prevent such placement or, in the case of an emergency placement where services were not offered and could not have prevented the necessity of placement, whether this level of effort was reasonable due to the emergency nature of the situation, safety considerations and circumstances of the family.

42 Pa.C.S. § 6332.

### E. QUALIFIED AND ABSOLUTE IMMUNITY

Defendants argue that the Defendants Eller and Barth are entitled to absolute and qualified immunity. Doc. 49 at 2. Doc. 62 at 13-22. Absolute and qualified immunity are affirmative defenses. *Crawford-el v. Britton*, 523 U.S. 574, 588; 118 S. Ct. 1584, 1591; 140 L. Ed. 2d 759, 773 (1998).

#### i. Absolute Immunity

In the instant case, Defendants Eller and Barth are employees of Somerset County Children & Youth Services, and were clearly acting under the color of state law in the scope of their employment as caseworkers when the alleged facts occurred.

In *Miller v. City of Philadelphia et. al.*, the Third Circuit distinguished the actions of a social worker simply pursuing an investigation versus those of a social worker directly involved in the judicial process through the seeking of a judicial order; the former does not have absolute immunity, while the latter does. 174 F.3d 368. Further, the Third Circuit has held that child welfare workers have absolute immunity *in the context of dependency proceedings* (*i.e.*, preparing for, initiating and prosecuting such hearings), but has declined to extend that absolute immunity to investigative or administrative actions taken *outside* the context of a judicial dependency proceeding. See *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 495-498 (3d Cir. 1997); cited by *Bowser v. Blair County Children and Youth Services, et. al.*, 346 F. Supp.2d 788,791-92 (W.D. Pa. 2004). While recognizing absolute immunity for social workers in their investigation and formulation of opinions in preparation for dependency hearings, the *Ernst* Court also stated that it "would be unwilling to accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Ernst* at 497, fn. 7. Thus, limits to parental rights which are imposed by a State official without the sanction of a court order would presumably not receive absolute immunity. Or, to put it another way, we interpret the *Ernst* decision to mean that wherever

any parental custody or visitation right is abrogated as a result of the investigation of a social services agency, there must be a judicial court order before such abrogation if the social workers involved are to receive absolute immunity.[3]

### ii. Qualified Immunity

As we have previously outlined, the Third Circuit has explained qualified immunity as follows:

> A right is 'clearly established' for qualified immunity purposes only if 'the contours of the right' are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' Thus, defendants are entitled to qualified immunity if 'reasonable officials in [their] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.' Even where officials 'clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles.'
>
> However, for reasonable officials to be on notice that their conduct would be unlawful, there need not be 'a previous precedent directly on point.' Rather, there need only be 'some but not precise factual correspondence between relevant precedents and the conduct at issue,' so that 'in the light of pre-existing law the unlawfulness [would be] apparent.'

*Bowser v. Blair County Children and Youth Services, et. al.*, 346 F. Supp. 2d 788, 795 (W.D. Pa. 2004); quoting *Larsen v. Senate of Com. of Pa.*, 154 F.3d 82, 87 (3d Cir. 1998).

Thus, in considering a defense of qualified immunity, the Court must first consider whether a constitutional right was violated, and next if the right was clearly established when the alleged violation occurred. *Bowser* at 800; citing *Conn. v. Gabbert*, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999).

To generate liability an official's act must be "so ill-conceived or malicious that it 'shocks the

---

[3] This interpretation is further supported by the fact that the *Ernst* Court also found the CYS attorney absolutely immune for her actions relating to the case during the period of time where she was temporarily removed from the case in question by a judge of the Chester County Court of Common Pleas. The *Ernst* Court noted that "a prosecutor or other official performing a quasi-prosecutorial function for the state is entitled to absolute immunity for official actions taken on behalf of the State that are integrally related to the judicial process." *Ernst* at 502.

conscience.' . . . Critically, under this standard, officials will not be held liable for actions that are merely negligent." *Miller et. al. v. City of Philadelphia et. al*, 174 F.3d 368, 375 (3d Cir. 1999). This is a fact-specific inquiry: "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller et. al. v. City of Philadelphia et. al.*, 174 F.3d 368, 375 (3d Cir. 1999); see also *Brown v. Daniels et. al.*,128 Fed. Appx. 910 (3d Cir. 2005). The Third Circuit has acknowledged that often a social worker will not have the luxury to proceed in a measured, deliberate fashion, as the imminent welfare of a child may be at stake. *Id.* At 375. As a result, for the purposes of a substantive due process analysis, the standard of culpability must be something more than negligence and deliberate indifference, and must at least reach a level of gross negligence or arbitrariness that shocks the conscience (although it need not rise to the level of purposefully intending to cause harm). *Id.* At 375-76.

## VI. DISCUSSION/ARGUMENTS

### A. QUALIFIED AND ABSOLUTE IMMUNITY

Plaintiffs have alleged violations of their constitutional First and Fourteenth Amendment rights, specifically a violation of Plaintiff B.S.' fundamental liberty interest in the care, custody, and management of her minor child, M.N., and a violation of her due process rights. Doc. 13. Defendants argue that the individual defendants named in this suit are entitled to absolute and qualified immunity. Doc. 49 at 2. Doc. 62 at 13-22.

#### i. Absolute Immunity

We find that Defendants Eller and Barth in the instant case have absolute immunity, as the acts they performed in seeking a judicial order transferring custody from the Natural Mother to the Natural Father were closely associated with the judicial process. As Defendants have argued, the Juvenile Act's requirement of a hearing within 72 hours, with reasonable notice to the parents or guardians so

that they may be present and represented, is required only for a delinquency or dependency hearing. See discussion of Juvenile Act, supra. However, since custody of the Minor Child was transferred from the Natural Mother to the Natural Father, thus changing the custodial rights of the mother, we find in line with *Ernst* that some judicial proceeding was necessary. However, the *ex parte* proceeding before the Somerset County Court of Common Pleas judge was sufficient; and since this state action affecting custody rights was accomplished through a judicial proceeding, therefore Defendants Eller and Barth are entitled to absolute immunity.

In this case both Defendant Eller and her supervisor, Defendant Barth, were directly involved in the judicial process and presented evidence to the Somerset County Court of Common Pleas judge issuing the Emergency Custody Order. Thus, in the instant case, although there was no automatic hearing as would be required under the CPSL or the Juvenile Act, because the Minor Child was not being adjudicated delinquent or dependent, see supra, nonetheless the transfer of custody of the Minor Child to the Natural Father *was* accomplished through a judicial proceeding (and the parents had an opportunity to file for additional hearings/proceedings), and therefore Defendants Eller and Barth are entitled to absolute immunity. Therefore, we find that Defendants Eller and Barth have absolute immunity, and summary judgment is granted as to these Defendants.

## ii. Qualified Immunity

Even if we did not find that Defendants Eller and Barth had absolute immunity, we would find that they had qualified immunity. Defendants argue that Plaintiffs have not met their burden of establishing that any of the Defendants in this case acted in a manner which was not objectively reasonable. Doc. 62 at 19. We agree. Defendants Eller and Barth could have believed, based on the information available to them, that their conduct was lawful, and that in acting pursuant to a court order they fulfilled due process concerns. Therefore, summary judgment is appropriate as to

23

Defendants Eller and Barth, based on qualified immunity.

The Third Circuit noted in *Bowser*, supra, that "[a]lthough the actual issue has not been before it for adjudication, the Third Circuit has recognized that the district courts of this circuit have found Pennsylvania's procedure used in acquiring *ex parte* orders which grant custody to county CYS agencies to be constitutional." 346 F. Supp. 2d 788, 795. In the instant case, as in *Bowser*, there was an *ex parte* order, but in applying the balancing of rights we note that in the instant case the right allegedly affected, custodial rights of the parent, was not as weighty as that in *Bowser*, as in the instant case CYS did not take custody of the Minor Child, but rather transferred custody from the Natural Mother to the Natural Father. Thus, we reach the same conclusion as in *Bowser* that "if absolute immunity had been denied by this Court and qualified immunity was an issue in this matter, such qualified immunity would extend to the circumstances of this case so as to protect the acts of the individual [CYS] Defendants." *Id.* At 795.

In *Brown v. Daniels*, the Third Circuit held that where a minor child was removed from the custody of his parents, and a post-deprivation hearing was not held until seven weeks after the Minor Child's removal, the social worker defendant was *not* entitled to qualified immunity. 128 Fed. Appx. 914-916 (3d Cir. 2005). Noting that while the plaintiffs did not challenge Pennsylvania's child protection laws and their requirement for a post-deprivation hearing within 72 hours when a child is removed from parental custody, they *did* allege a violation of their due process rights by virtue of the social worker defendant's failure to follow these State laws, *i.e.*, a procedural due process violation. *Id.* at 914. The Court noted that a *post-deprivation* hearing "should ordinarily be measured in hours and days, as opposed to weeks", and found that the CYS employee was not entitled to qualified immunity because she "could not have believed that a post-deprivation hearing conducted seven weeks after the removal of a child from his parents' home complied with due process." *Id.* at 916. In the

24

instant case we do not have a violation of Pennsylvania's statutes regarding post-deprivation hearings, as the Minor Child was never found to be a dependent of the state, nor removed from parental custody altogether, custody was simply transferred from one natural parent to the other. (Further, we note that the Order that was entered on June 23, 2006, after the investigation had been completed and forty-five (45) days after the entry of the Emergency Custody Order, specifically noted that either parent was given the option to schedule hearings regarding the transfer of custody. *Brown v. Daniels*, described supra, in which the Third Circuit found that failure to conduct a hearing for seven weeks was too great a period for temporary deprivation of parental custody pending investigation into allegations of abuse, is different from the case sub judice: in *Brown* the child was removed from the custody of both natural parents and placed in the custody of the state, and a hearing was necessary to determine whether or not the minor child should be adjudicated a dependent of the state. As the Court discussed previously in this Memorandum, where dependency is at issue, Pennsylvania's child protection acts provide for required hearings at definite time periods. Dependency was never an issue in the instant case, where the Natural Father has been available to care for the Minor Child. Further, the Minor Child has never been in the custody of the state in this case).

Plaintiffs argue throughout their briefings that Defendant Eller's actions were motivated by a personal animus towards Plaintiff B.S., and that therefore she should be held liable. See, e.g., Doc. 76. However, the Third Circuit has clearly held that the state official's subjective state of mind is irrelevant – the standard is whether a reasonable prosecutor in Defendants Eller and Barth's positions *could* have had a good faith belief that she was authorized to act as they did; if so, absolute immunity will be recognized. See *Ernst*, supra, at 502.[4,5]    In the instant case, we believe that there was sufficient

---

[4] "If absolute immunity is to serve its purpose, the line between official conduct, as to which there is immunity, and extra-official conduct, as to which there is not, must be drawn without reference to the official's subjective state of mind. It

empirical evidence such that Defendants Eller and Barth, could have a good faith belief that they were authorized to act as they did, therefore absolute immunity applies. Alternatively, had we not already determined that Defendants Eller and Barth have absolute immunity, we would determine that they have qualified immunity and grant summary judgment in their favor on that basis alone.

## B. RESPONDEAT SUPERIOR

Defendants further argue that the governmental entities named in this suit cannot be held liable by virtue of *respondeat superior*. Doc. 49 at 2.

The Third Circuit has held that "[i]t is well-established . . . that liability in a § 1983 action must be predicated upon personal involvement, not on the basis of *respondeat superior*. *Brown v. Daniels, et. al.*, 128 Fed. Appx. 910, 913 (3d Cir. 2005). Similarly, in order to establish liability on the part of Somerset County and Somerset County CYS, the Plaintiffs would have to demonstrate "an established policy or custom that resulted in the alleged constitutional violations." *Id.*; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 56 L.Ed., 2d 611, 98 S. Ct. 2018 (1978).

## C. DUE PROCESS

At Count I, Plaintiffs allege a substantive due process violation, resulting from "a policy, practice, and procedure of Somerset County CYS to approach judges and seek to transfer custody in cases when reports of abuse or neglect are received and there is a pending custody case between

---

must also be drawn in a manner that leaves officials room for good faith mistakes about the extent of their authority. Thus, if the circumstances in a particular case were such that a reasonable prosecutor in the defendant's position *could* have had a good faith belief that he was authorized by his office to act as he did, immunity will be recognized. In such a case, an allegation that the official acted in bad faith, knowing his conduct to be unauthorized, will not strip the official of absolute immunity." *Ernst* at 502.

[5] Indeed, it would be implausible to judge cases by any other standard – social work, by its very nature, will tend to elicit emotional reactions from those involved in protecting children's rights. Courts are required to make a fact-based review, however they could not properly perform this function if they were to deviate from the "reasonable person under the circumstances" standard and instead evaluate the motivations and emotions of every official or state actor, in each case and each action therein; such an approach would make it impossible for child protective agencies and the courts to pursue their interest in and obligation of protecting children, and would effectively bring the system to a halt without producing any justifiable benefit.

parents who are separated." Doc. 13 at 20. Count II alleges a violation of Plaintiffs' procedural due process rights because the Emergency Custody Order, supra, took place without a "timely hearing". Doc. 13 at 21. Count II further alleges that Defendants Eller and Barth purposefully misrepresented the facts and failed to follow Pennsylvania's Juvenile Act and Child Protective Services Law, which required "a justif[ication of] the suspension of parental custody rights in a fair judicial proceeding." Doc. 13 at 22. Count III alleges that the constitutional "First Amendment Right of Association" between Plaintiffs and the Minor Child was violated without a compelling state interest. Doc. 13 at 22. Count IV alleges a conspiracy between the Defendants to deprive Plaintiff B.S. of her procedural due process rights. Doc. 13 at 23.

Plaintiffs argue that B.S.' due process rights were violated by CYS' policy of transferring custody of a minor child from one parent to another without holding an automatic hearing within 72 hours after such transfer, and that such policy is unconstitutional.[6] Doc. 59. Plaintiffs further argue that the *ex parte* communications between CYS employees and the Somerset County Court of Common Pleas judge who issued the Emergency Custody Order and ruling on the habeas corpus petition were in violation of due process protections under the Fourteenth Amendment. Doc. 13 at 20-22. Defendants argue that summary judgment must be awarded in favor of Somerset County and Somerset County CYS because Plaintiffs have failed to show a local government policy or custom that caused the deprivation of Plaintiffs' constitutional rights. Doc. 62 at 20-21. Defendants argue, in essence, that Plaintiffs were afforded due process because they had the right to schedule a hearing if they chose, pursuant to the June 23, 2006 order by the Somerset County Court of Common Pleas

---

[6] The parties agree that an automatic hearing within 72 hours is CYS' standard policy where it takes custody of the child under the CPSL or the Juvenile Act, making the child a dependent of the state. Docs. 59, 62. Defendants argue that the automatic hearing to which Plaintiffs refer does not apply in this case because the Minor Child was not taken into state custody, but rather custody was transferred from one parent to another. Doc. 62.

judge. Doc. 62 at 4-8; see also text of order, supra . Defendants argue that Plaintiffs will not be able to support a claim of unconstitutional policy, practice or custom, therefore summary judgment in favor of Defendants is appropriate. Doc. 49 at 2. Defendants further argue that the procedures utilized by Defendants in effectuating the transfer of custody comported with due process requirements. Doc. 49 at 2.

As stated supra, Plaintiffs are correct that the liberty interest of a parent in the care, custody and management of their child falls under the protection of the Fourteenth Amendment. See *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir. 1999). Plaintiffs argue that in removing M.N. from the Natural Mother's custody, Defendants violated Plaintiffs' due process rights. Doc. 59. Defendants argue that the procedures utilized by Defendants in effectuating the transfer of custody from the Natural Mother to the Natural Father did not violate due process requirements, and that even if the Court were to find that it did, no harm was suffered as a result, as the custody of the Minor Child remains with the Natural Father. Doc. 49 at 2-3. Thus, Defendants argue that since Plaintiffs have not shown any "different result" due to the alleged lack of due process, summary judgment for the Defendants is appropriate. Doc. 62 at 13.

Plaintiffs argue that "under the Fourteenth Amendment, B.S. is entitled to some form of hearing, before suffering a prolonged interruption of her custody rights as a result of state action." Doc. 59 at 16. Plaintiffs further argue that even if the removal was an emergency measure, a prompt post-deprivation hearing should have automatically been held. Doc. 59 at 16-17. Plaintiffs cite several cases which they say stand for the proposition that where a state takes custody of children the child welfare agency involved must schedule court hearings. Doc. 59 at 17. However, in the instant case, the Commonwealth of Pennsylvania did *not* take custody of M.N. Rather, custody was transferred from the Natural Mother to the Natural Father until such time as it could be determined that the Natural

28

Mother was not a danger to the Minor Child. See recitation of facts, supra.[7] Further, the order issued by the Somerset County Court of Common Pleas on June 23, 2006 *explicitly stated* that either parent could request a hearing (see Doc. 52-16), and the record indicates that B.S. *did not* make this request. Doc. 62 at 4. Plaintiffs assert that this order of June 23, 2006 was "secret". Doc. 59 at 13. However, as stated supra, the captions on the Petition for Writ of Habeas Corpus, filed by B.S. on May 15, 2006, and the Orders entered on June 7, 2006, June 23, 2006 and June 26, 2006, all depict the same case number. This certainly seems to indicate an awareness that a case was pending – given that B.S.' attorney was listed as the attorney of record in this case, he would have been given notice by receiving a copy of these documents from the Court. In any event, since Plaintiffs knew of the case number and its pendency, and given the seeming importance of the issues pending, and their emotional distress over the issue, they should have been monitoring the case for filings, or gone to the Clerk of Court with questions. There certainly is no evidence of clandestine, secret proceedings.

Plaintiffs further allege the occurrence of an *ex parte* communication between Ms. Eller and Judge Cascio after the *habeas corpus* hearing, was a violation of due process because the *habeas corpus* petition was disposed of on the merits as a result of this *ex parte* communication, and because B.S. never had the opportunity to refute the allegedly falsified facts submitted to the Judge on that occasion. Doc. 59 at 22-23. However, the Habeas Corpus Order (Doc. 52-14) indicates that the denial of the *habeas corpus* petition was based on the fact that the Minor Child was not in the custody of the State, thus the petition was not appropriate in that case; this was a question of law, not fact. Further, as we noted supra, in pre-deprivation hearings *ex parte* communications have been found not to violate

---

[7] Further, the cases cited by Plaintiffs state that there is no bright-line rule for what is considered to be prompt, and Plaintiffs even cite one case where a court found a 72-day delay between the state taking custody and a hearing being held to be outrageous but found no damages as a result, and thus no due process violation. Doc. 59 at 17; citing *Berman v. Young*, 291 F.3d 976, 985 (7th Cir. 2002).

29

due process, and in those hearings a more serious interference with the parental liberty right is to be determined, that of a child's potential status as dependent on the state. Thus, we see no reason to impose a more rigorous standard here, where the potential curtailment of parental liberty rights is not as great.

Plaintiffs argue that Defendants violated Pennsylvania state-proscribed due process procedures, outlined in the CPSL and the Juvenile Act, by failing to have a mandatory informal hearing within 72 hours of the transfer of M.N.'s custody from her Natural Mother to her Natural Father. Defendants argue that the mandatory 72-hour informal hearing required under the CPSL and the Juvenile Act does not apply in this case because the Minor Child was never determined to be a Dependant of the state under those Acts, and was not taken into custody by the state. Doc. 62; Doc. 59 at 18.

Plaintiffs acknowledge that Pennsylvania's Juvenile Act has been found to satisfy due process, but argues that because a hearing was not held within 72 hours, as required under the Juvenile Act, due process was not met in this case. Doc. 59 at 18. Plaintiffs further argue that in this type of case, where the state does not take custody but rather transfers custody from one parent to another, or simply terminates nonsupervised contact, there is a practice of due process violations because there is no automatic hearing within a certain time period after this state action takes place. Doc. 59 at 19-20. Plaintiffs argue, in essence, that CYS has found a loophole in state law through which it can violate constitutional rights by "avoid[ing] the steps suggested by the statutory scheme of the CPSL and the Juvenile Law." Doc. 59 at 19. This alleged loophole is essentially accomplished by transferring a child from the custody of one parent to another, rather than taking custody, which would trigger the due process protections of the CPSL and Juvenile Law, which have already been judicially reviewed and found to be constitutionally sufficient. See Doc. 59 at 18-19.

Defendants are correct. The Emergency Custody Order entered by the Court of Common Pleas

of Somerset County did not specify that it was finding the Minor Child to be a Dependant of the state.

Further, the Habeas Corpus Order specifically stated that the Minor child was *not* a dependent of the

state. Doc. 52-14.

Pennsylvania State courts have held that:

> [t]he definition of a dependent child contained in section 6302 clearly states that a child must lack a parent, guardian or other legal custodian who can provide appropriate care to the child. *A child whose non-custodial parent is ready, willing and able to provide such care does not meet this definition.* [*internal citations omitted*]. (*emphasis added*).
>
> "It is the duty of the trial court to determine whether the non-custodial parent is capable and willing to render proper parental control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control 'at this moment' and that the non-custodial parent is 'immediately available' to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent. Once custody is granted to the non-custodial parent, 'the care, protection, and wholesome mental and physical development of the child' can occur in a family environment as the purpose of the Juvenile Act directs."
>
> . . .
>
> When a court adjudges a child dependent, that court then possesses the authority to place the child in the custody of a [non-parent] relative or a public or private agency. Where a non-custodial parent is available and willing to provide care to the child, such power in the hands of the court is an unwarranted intrusion into the family. Only where a child is truly lacking a parent, guardian or legal custodian who can provide adequate care should we allow our courts to exercise such authority. Accordingly, we hold that where a non-custodial parent is ready, willing and able to provide adequate care to a child, a court may not adjudge that child dependent.

*In re M.L.*, 562 Pa. 646, 650 (Pa. 2000); citing 42 Pa.C.S. § 6301(b); quoting *Justin S.*, 375 Pa.

Super. 88, 104; 543 A.2d 1192 (1988).

The Pennsylvania Supreme Court has found that a court *may* transfer custody from one parent

31

to the other absent a finding of dependency, reasoning that "[j]udges in custody matters have broad powers to fashion remedies to meet the best interests of the children involved. . . . Custody orders, unlike orders in other civil matters, are inherently mutable when the circumstances dictate a change or modification. Therefore, granting custody judges broad discretion to act when the court deems it appropriate is necessary to meet the best interests of children." *In re M.L.*, 562 Pa. 646, 651, fn. 3 (Pa. 2000).

In addition, the Third Circuit, in considering procedural due process concerns under a similar set of facts, has determined that emergency *ex parte* child custody hearings are not necessarily a violation of procedural due process. *Miller et. al. v. City of Philadelphia et. al.*, 174 F.3d 368, 373-74 (3d Cir. 1999). Indeed, the Third Circuit has found that to require that a parent or his/her attorney be present at emergency pre-deprivation hearings would "inhibit, deter and, at times, subvert the crucial function of *ex parte* custody hearings – protecting children who are in imminent danger of harm. We therefore conclude that the holding sought by Appellants would create a burden on the state that would not be justified by commensurate relief to the affected parents' rights." *Id.* At 374.

As we found in *Patterson,* supra, we similarly find here: "Under all of the circumstances, and comparing them with the facts and circumstances of *Croft* and *Miller*, [supra,] defendants clearly, and as a matter of law, had reasonable and articulable evidence before them giving rise to a reasonable suspicion that [the Minor Child] had been abused or was in imminent danger of abuse. Their conduct did not approach the level of arbitrary government action of the case worker in *Croft*, and a reasonable jury could not conclude, on the undisputed historical facts, that their conduct 'shocks the conscience.'" 141 F. Supp.2d 512, 523 (W.D. Pa. 2001). Accordingly, as we did in *Patterson*, this Court . . . finds that the individual Defendants are entitled to summary judgment on Plaintiffs' claim of deprivation of their substantive and procedural due process rights under the Fourteenth Amendment and 42 U.S.C. §

32

1983. *Id.* at 525.

Further, we find that summary judgment in favor of Somerset County and Somerset CYS is appropriate. We conclude from the record that the policies or customs of Somerset County and Somerset CYS which are followed in transferring custody from one party to another meet constitutional due process concerns. As noted, the Emergency Custody Order did not terminate all parental custody rights; rather, it transferred primary custody from the Natural Mother to the Natural Father and provided for supervised visitation of the Natural Mother with the Minor Child. See supra. Further, the Emergency Custody Order noted that it was temporary in nature, "pending the outcome of the investigation." Doc. 52-11. A month and a half after the entry of this order, upon completion of further investigation and a report by Somerset CYS, the Somerset Court of Common Pleas entered the order of June 23, 2006, which held that pursuant to Somerset CYS' findings, primary custody would remain with the Natural Father and visits between the Natural Mother and Minor Child would be supervised. Doc. 52-16. This June 23, 2006 Order specifically noted that either parent could schedule hearings on the matter. *Id.* Further, when the Natural Mother's attorney filed a *habeas corpus* petition, despite the fact that the state was not in possession of the "corpus" of the Minor Child, the Somerset County Court of Common Pleas held a hearing and heard arguments. See supra. The record shows no indication that the Natural Mother attempted to schedule a hearing on the June 23, 2006 Order. However, she has pursued custody through alternate means, and the parents are currently involved in custody litigation. See supra. Therefore, we find that the Natural Mother is receiving and has received due process. Further, we find that the practice of Somerset County and Somerset CYS of transferring custody between natural parents temporarily, on an emergency basis, based on a preliminary finding of probable child abuse and potential imminent danger, and pursuant to a court order (after an *ex parte* hearing between Somerset CYS and a judge), meets due process. The period of

forty-five days during which Somerset CYS concluded its investigation was not an overly lengthy deprivation of the Natural Mother's status as primary custodian pending the completion of the investigation into suspected abuse of the Minor Child on her part. This is especially true when we consider that she was given supervised visitation rights and custody was simply transferred to the Natural Father, who had shared custody of the Minor Child prior to the entry of the Emergency Custody Order, and with whom the Minor Child therefore had a relationship. Further, the practice of offering a hearing upon request by either parent after such a transfer of custody, as provided in the June 23, 2006 Order, meets due process concerns. Further, litigants are free to pursue alternate means of custody litigation in state courts, which the Natural Mother is doing in this case. See supra. Therefore, we find that the custom or policy of Somerset County and Somerset CYS of transferring custody temporarily on an emergency basis where potential child abuse is indicated, pending the outcome of an investigation into the alleged abuse, meets substantive and procedural due process concerns. In addition, the custom of offering a hearing upon request by either natural parent, where custody has been transferred between natural parents indefinitely, as a result of a finding of abuse, meets due process concerns.

## VII. CONCLUSION

Therefore, Plaintiffs' Motion for Summary Judgment (Doc. 53) is **DENIED**. Defendants' Motion for Summary Judgment (Doc. 49) is **GRANTED**. An appropriate order follows.

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

B.S. and B.S. *as guardian and parent of* )
T.S., G.S., and N.S., )
 )
 )
   Plaintiffs, )
 ) CIVIL ACTION NO. 3:08-30
  v. ) JUDGE KIM R. GIBSON
 )
SOMERSET COUNTY, SOMERSET )
COUNTY CHILDREN AND YOUTH )
SERVICES, JESSICA ELLER, JULIE )
BARTH, )
 )
   Defendants. )

## ORDER

**AND NOW**, this 16th day of March, 2011, this matter coming before the Court on Plaintiffs'

Motion for Summary Judgment (Doc. No. 53) and Defendants' Motion for Summary Judgment (Doc.

No. 49), **IT IS HEREBY ORDERED** that the Plaintiffs' Motion for Summary Judgment is **DENIED**

and the Defendants' Motion for Summary Judgment is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**